No. 05-280

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 27

CENTECH CORPORATION,

        Petitioner and Respondent,

   v.

HEIDI SPROW,

        Respondent and Appellant.

APPEAL FROM:    The District Court of the Eighteenth Judicial District,
                   In and For the County Gallatin, Cause No. DV 2000-290,
                   Honorable Mike Salvagni, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        Geoffrey C. Angel, Angel Law Firm, Bozeman, Montana

        For Respondent:

        James M. Kommers, Kommers Law Firm, Bozeman, Montana

                               Submitted on Briefs:  December 21, 2005

                                  Decided:  February 7, 2006

Filed:

_____
                         Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1      Heidi Sprow filed a complaint in 1998 alleging that her then employer, CEnTech Corporation (CEnTech) practiced sex discrimination by paying male workers more than female workers. A protracted course of litigation through the Department of Labor and Industry (Department) and the District Court ensued.

¶2      We restate the issue as follows: Did Sprow plead that CEnTech practiced sex discrimination with regard to her full-time employment?

## BACKGROUND

¶3      CEnTech, a company specializing in spa covers, relocated to Bozeman, Montana, in August 1998, at which time it hired Sprow, along with approximately sixteen other workers. Initially, CEnTech, owned by Gary and Lisa Perry, employed Sprow full-time at a rate of $7.50 an hour. In October 1998, Sprow requested that CEnTech make her a part-time employee. Gary Perry (Perry), CEnTech's President, expressed disappointment to Sprow, as he had expected her to become a lead worker in her department; he explained to Sprow that he would not be able to keep her at $7.50 an hour because it would not be fair to his other part-time employees (Jenine Shay and Kurt Gardner), whom he paid $6.00 an hour.

¶4      Later that day, Sprow asked fellow part-time worker Gardner his rate of pay. Gardner told Sprow that he earned $7.00 an hour and then asked why she wanted to know. When Sprow told him that Perry claimed he paid the part-time employees $6.00

2

an hour, Gardner said, "Oops, maybe that's why he didn't want me to mention my wage to anyone."

¶5    Shay, the third part-time employee and a junior in college studying elementary education, earned $6.00 an hour.

¶6    After complaining to her supervisor to no avail, Sprow began working part-time on October 19, 1998, at $6.00 an hour. On December 10, 1998, Sprow filed a complaint of discrimination with the Human Rights Bureau, a division of the Department, charging that CEnTech had paid her $6.00 an hour—a dollar less than a male coworker—because of her sex.

¶7    Eight days later, due to a decrease in work, CEnTech laid off Sprow and Shay. While Gardner was not let go, he did leave the corporation.

¶8    In response to Sprow's allegations, CEnTech strongly denied practicing sex discrimination. Perry stated that he paid Gardner a higher wage because Gardner had a college degree and intended to move into full-time work in 1999, making him an excellent investment for the corporation. Sprow, on the other hand, did not have a college degree and, according to Perry, clearly had no plans to grow with the company. For these reasons, Perry explained, CEnTech paid Sprow a lower wage when she moved to part-time work.

¶9    Sprow dismissed CEnTech's defense, noting that in the beginning, all of the employees were hired at the same rate of pay, with the exception of Kenneth Milledge, who had a degree in Mechanical Engineering Technology and received pay relevant to

his position. According to Sprow, not only was Gardner's degree irrelevant to his job, he had less experience than Sprow. Moreover, Gardner had no intention to quit his full-time job at Gibson Guitar to work full-time at CEnTech, his third job. Sprow further alleged that Anita Nelson and Randy Heinrich both did spray work, but Nelson earned only $7.50 an hour compared to Heinrich's $8.00.

¶10 On May 21, 1999, Susan Brunner, an investigator with the Human Rights Bureau, filed an investigative report concluding that CEnTech's overall wages reflected favoritism to male employees—not only did Gardner and Milledge receive higher pay, but also Jay Joyner and Randy Heinrich. Brunner's report stated that "the allegations of Heidi Sprow's complaint are supported by a preponderance of the evidence." Importantly, Brunner also noted that CEnTech "*articulated a legitimate non-discriminatory reason* for the disparity in pay in that the male *part-time* employee was paid a higher wage because his objective was to move to full-time work, and respondent deemed him to be an excellent future full-time employee who has a college degree." (Emphasis added.) In other words, Brunner concluded that CEnTech discriminated against Sprow based on pay discrepancies in her full-time employment, not her part-time work.

¶11 Following a contested case hearing in March 2000, the Department's Hearings Bureau (Hearings Bureau) issued a final agency decision in 2000, written by hearing examiner Terry Spear, in favor of Sprow. The decision held that while CEnTech had been able to provide a legitimate non-discriminatory reason for paying Sprow a lesser

4

wage when she worked part-time, "Sprow established that for the *full-time* work she was doing, she was as qualified as the other workers were." (Emphasis added.) Importantly, the 2000 decision acknowledged that Sprow's 1998 complaint only alleged that CEnTech discriminated against her with regard to her *part-time* wages. In order to reach the conclusion that CEnTech discriminated against Sprow during her *full-time* work, hearing examiner Spear expressly amended the pleadings, stating the following in footnote 7 of the 2000 decision:

> Sprow's contentions included some references to the full-time wage rates that were pivotal to this decision. Her case focused more on the part-time wages she earned. By amending the pleadings and issues to conform to the evidence, the hearing examiner included the full-time wages within the jurisdiction of the department in this case.

¶12 CEnTech appealed to the Human Rights Commission (HRC)—the final level in the Department's administrative process. On November 22, 2002, the HRC heard oral argument in the case. A discussion ensued regarding the contents of Sprow's 1998 complaint. The HRC ultimately concluded that the complaint alleged sex discrimination as to her part-time employment, but not full-time. Concerned that CEnTech had not been afforded due process, the HRC initially voted to reverse the 2000 decision 2000 because CEnTech had not received adequate notice that it would be asked to defend on the issue of full-time wage disparity.

¶13 Prior to issuing the written order, the same panel of HRC Commissioners reconvened in January 2003 after notifying both parties. The HRC remanded the case back to the Hearings Bureau for the "limited purpose" of providing CEnTech with an

5

opportunity to present its legitimate non-discriminatory reason for paying its full-time women employees less than its full-time male employees. The parties were advised that the hearing examiner would weigh the evidence from the first hearing held in 1999 against any live evidence CEnTech presented, and any live evidence Sprow presented on rebuttal.

¶14 CEnTech asserted that it would not present evidence of a legitimate non-discriminatory reason for paying Sprow a lesser full-time wage because Sprow did not make such a charge in her 1998 complaint or any subsequent pleadings. CEnTech filed a motion to dismiss, which the Hearings Bureau denied. CEnTech again declined to present further evidence, maintaining that the issue of full-time wage disparity was not properly before the HRC. Since neither party wished to present additional evidence, the hearings examiner vacated the hearing and deemed the matter submitted on the record. Thus, the HRC again found in favor of Sprow in its 2003 final agency decision, awarding affirmative relief and compensatory damages. The hearing examiner concluded that "Sprow proved her *prima facie* case regarding her full-time wages" and that "CEnTech refused to put on any additional evidence to demonstrate a legitimate business reason for the full-time wage disparity."

¶15 CEnTech appealed the 2003 decision, maintaining once again that the pleadings did not contain an allegation of full-time employment discrimination. Because the HRC struck down hearing officer Spear's express amendment inserted into the 2000 decision, CEnTech argued that the 2003 decision must be stricken because the issue of full-time

wage disparity did not exist, as it was not formally included in the pleadings. CEnTech insisted that it had no obligation to present argument on remand.

¶16 In February 2004, unconvinced by CEnTech's argument, the HRC issued an order affirming the 2003 decision. The HRC denied CEnTech's assertion that its 2003 decision struck the hearing officer's amendment to the 2000 decision regarding the full-time wage disparity issue. The HRC stated that it merely "found error in the . . . failure to provide [CEnTech] an opportunity to defend." The 2004 order further stated that the amendment to the 2000 decision was unnecessary, as Sprow's pleading sufficed.

> Looking first at Sprow's original 1998 complaint, she states, "I believe respondent is paying me a lower wage than it pays male employees, based on my gender." Then, in the Final Pre-Hearing Order (signed by CEnTech) the parties agreed the "issues of fact" included whether the corporation paid "lower wages to Sprow and other female employees than males" and "did [CEnTech] have a legitimate business reason for doing so." *Final Pre-Hearing Order, VIII Issues of Fact, No. 3, pg. 2*. Therefore, the pleadings set forth the issue of "wage disparity" in general terms and the issue is not restricted to either Charging Party's full or part-time status.

¶17 The 2004 order further stated that Rule 15(b), M.R.Civ.P., allows issues not raised by the pleadings to be tried by implied consent of the parties. The HRC determined that because CEnTech did not object to the evidence supporting the hearing examiner's findings of a full-time wage disparity in the pre-hearing order, the corporation consented to trying the issue. Concluding that the 2003 decision contained no error, the HRC affirmed.

7

¶18 Pursuant to § 2-4-704(2)(a)(iii), MCA, CEnTech appealed the HRC's February 2004 order to the Montana Eighteenth Judicial District Court, Gallatin County. The court reversed in favor of CEnTech, concluding as follows:

> [T]he HRC erred as a matter of law in remanding the case back to the Hearings Bureau. After concluding that the full-time wage disparity issue was not tried by express or implied consent of the parties, the Department lacked jurisdiction to make a determination as to CEnTech's full-time wage practices. The Court finds that the actions the HRC and the Department took in 2003 were in excess of the statutory authority of the agency and made upon unlawful procedure. The Court also determines that the HRC's 2004 decision, in which it attempted to justify its 2003 Order of remand, was incorrect as a matter of law. Finally, the Court finds that the substantial rights of CEnTech have been prejudiced by the HRC and the Department. Specifically, CEnTech was forced to answer and defend against claims for which it was never accused. CEnTech's due process rights were ignored by the HRC. . . . Furthermore, if the HRC, in January 2003, had properly stricken the Hearing Examiner's findings concerning full-time wage discrimination, the matter would have ended there. This cannot be considered harmless error.

(Citations omitted.)

¶19 Sprow now appeals the District Court's reversal of the HRC's 2004 order affirming the 2003 decision in her favor.

## STANDARD OF REVIEW

¶20 The standard of review for final decisions of the Human Rights Commission is whether its findings of fact are clearly erroneous and whether the agency's interpretations of law are correct. We employ the same standard when reviewing a district court order which affirms or reverses an administrative decision. *Campbell v. Garden City Plumbing and Heating, Inc.*, 2004 MT 231, ¶ 10, 322 Mont. 434, ¶ 10, 97 P.3d 546, ¶ 10.

**DISCUSSION**

¶21 **Did Sprow plead that CEnTech practiced sex discrimination with regard to her full-time employment?**

¶22 At the outset, we note that Sprow incorrectly frames the issue as one of "jurisdiction," arguing that the District Court "misapprehended and misapplied the law" when it held that the HRC lacked jurisdiction to make a determination as to CEnTech's full-time wage practices. We agree with CEnTech's assertion that the real issue is *whether Sprow pled sex discrimination with regard to her full-time work*, as opposed to only her part-time wages.

¶23 Having thoroughly reviewed the record, we conclude that Sprow did not plead sex discrimination relating to her full-time wages. Sprow's complaint of discrimination references her full-time employment only as a matter of history: "I was hired by respondent on or about August 17, 1998 as a full-time employee, making $7.50 per hour." The remainder of Sprow's complaint details her dispute with Perry over the fact that she earned $6.00 an hour as a part-time worker, while a male part-time worker earned $7.00 an hour. Additionally, the pre-hearing order made no further suggestion that Sprow alleged sex discrimination in her full-time employment. The pre-hearing order reiterated that a disparity existed between her part-time wages and that of a male part-time worker—it did not compare Sprow's *full-time wages* to those of her co-workers. Not only did the pleadings fail to include an allegation of sex discrimination

with regard to full-time employment, Sprow failed to amend her pleadings in accordance with Rule 15, M.R.Civ.P, to incorporate such an allegation.

¶24   "[A]ny party claiming to be aggrieved" by any prohibited discriminatory practice may file a written complaint with the Department "within 180 days after the alleged unlawful discriminatory practice occurred or was discovered.  . . . Any complaint not filed within the times set forth in this section may not be considered by the commission or the department."   Section 49-2-501, MCA.   Although Sprow properly pled sex discrimination with regard to her part-time employment, she did not plead discrimination in her full-time employment "within 180 days of the alleged unlawful discriminatory practice."  Section 49-2-501, MCA.

¶25   Hearing examiner Spear *sua sponte* amended Sprow's pleadings to "conform with the evidence" that CEnTech practiced sex discrimination with regard to its full-time employees.  Under § 49-2-501, MCA, a complaint must be filed by a "party claiming to be aggrieved"—which Spear was not.  By amending the pleadings, Spear acted beyond his authority.  Additionally, the HRC acted beyond its authority by remanding the case back to the Hearings Bureau for the "limited purpose" of providing CEnTech an opportunity to present a legitimate non-discriminatory reason for paying its full-time women employees less than its full-time male employees.  CEnTech properly declined to offer such evidence, as the issue of full-time wage disparity was not pled.  Finally, the Commission erred in concluding that CEnTech impliedly consented to trying the issue of sex discrimination regarding full-time wages given that the pre-hearing order did not

raise the issue and CEnTech appropriately objected to the issue in every proceeding from that point forward.

¶26    We hold that Sprow did not plead wage disparity in her full-time employment, the Hearings Bureau erred by inserting the issue into the pleadings in the 2000 decision, and the HRC erred in its 2004 order by concluding that Sprow alleged full-time wage disparity.

¶27    Affirmed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ JOHN WARNER
/S/ JIM RICE
/S/ JAMES C. NELSON
/S/ BRIAN MORRIS