DA 12-0052

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 261

ELK MOUNTAIN MOTOR SPORTS, INC.,

      Petitioner, Appellee and Cross-Appellant,

  v.

MONTANA DEPARTMENT OF LABOR AND
INDUSTRY, UNINSURED EMPLOYERS' FUND,

      Respondent, Appellant and Cross-Appellee.


APPEAL FROM:    District Court of the First Judicial District,
                        In and For the County of Lewis and Clark, Cause No. ADV 2010-801
                        Honorable Dorothy McCarter, Presiding Judge


COUNSEL OF RECORD:

      For Appellant:

            Joseph Nevin, Special Assistant Attorney General, Montana Department of
            Labor & Industry, Helena, Montana

      For Appellee:

            David B. Gallik, Attorney at Law, Helena, Montana


                      Submitted on Briefs:  August 8, 2012
                                  Decided:  November 20, 2012


Filed:

              _____
                           Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1     The Uninsured Employer's Fund (the Fund) appeals an order from the First Judicial District, Lewis & Clark County, determining that the Fund had breached a contract with Elk Mountain Motor Sports (Elk Mountain).  The Fund also appeals an order requiring it to pay damages.  We affirm.

¶2     The Fund raises the following issues:

¶3     *Did the District Court properly determine that Elk Mountain was entitled to summary judgment on the question of whether the Fund had breached the payment plan agreement?*

¶4     *Did the District Court properly determine that Elk Mountain could receive consequential damages for the Fund's breach of contract?*

¶5     *Did the District Court properly deny the Fund's motion for post-trial relief?*

¶6     *Did the District Court properly calculate damages?*

¶7     Elk Mountain cross-appeals the District Court's decision to deny Elk Mountain's damage claim for ten years of lost profits.

## BACKGROUND

¶8     Elk Mountain operates an automobile and motor sports dealership in Helena, Montana.  Elk Mountain sells used cars and serves as an Arctic Cat dealership.  Bob McWilliams (McWilliams) owns Elk Mountain.  Elk Mountain previously employed Timothy Wilson (Wilson).  Wilson injured himself on January 8, 2004, while working for Elk Mountain.  Elk Mountain had failed to retain current worker's compensation insurance at the time of Wilson's accident.  Wilson accordingly filed a claim with the Fund.  The Fund

2

accepted Wilson's claim due to Elk Mountain's failure to retain worker's compensation insurance.

¶9     The Fund ultimately sought indemnity from Elk Mountain for Wilson's damages. The Fund struggled, however, to obtain payment from Elk Mountain. The Fund issued liens on Elk Mountain's bank account and eventually assigned to collection its claims against Elk Mountain.

¶10     The Fund pulled back Elk Mountain's account from collection after the parties agreed to an interim payment plan in 2009. The Fund proposed via letter that Elk Mountain pay the Fund $1,034 by the 15th of every month. Additionally, the Fund proposed Elk Mountain make a one-time payment of $3,534. The Fund proposed that this agreement would remain in place until Elk Mountain and the Fund reached a settlement. The proposal specified that the Fund retained the right to send Elk Mountain to collection if Elk Mountain failed to make payment by the 15th, or if the parties failed to attain settlement. Elk Mountain agreed to these terms.

¶11     The parties abided by this agreement until the Fund sent Elk Mountain a letter in May 2010 that proposed an alternative payment arrangement. Elk Mountain rejected the new proposal. The Fund immediately informed Elk Mountain that it would be turning its claims against Elk Mountain over to collection. The Fund asserted that it could send Elk Mountain to collection under the agreement in light of Elk Mountain having made four late payments. The Fund further claimed that Elk Mountain made no effort to pursue settlement with the Fund as dictated by the payment plan agreement.

¶12     The Fund followed through on its threat by turning Elk Mountain over to collection in July 2010. Elk Mountain responded by suing the Fund for breach of contract. The parties filed cross-motions for summary judgment on the breach of contract claim. The Court ultimately granted Elk Mountain's summary judgment motion on the issue of whether the Fund had breached the repayment agreement. The parties proceeded to a bench trial to determine Elk Mountain's damages in May 2011.

¶13     Elk Mountain contended at trial that the Fund's actions cost Elk Mountain substantial profits. Elk Mountain used floor plan financing (known as "flooring") to conduct its business. Elk Mountain borrows money pursuant to its flooring plan to purchase inventory. Elk Mountain repays that borrowed money from sale of the purchased inventory after it has sold the inventory.

¶14     Elk Mountain sought an SBA loan for this floor plan financing. Elk Mountain intended to process the SBA loan through First Community Bank. First Community Bank declined to process Elk Mountain's SBA application, however, once it received the Fund's letter advising First Community Bank that it had referred to collection Elk Mountain's debt. Elk Mountain could not pay for its current inventory without financing through its flooring plan. Elk Mountain returned merchandise to Arctic Cat for a re-stocking fee of $3,503.15. These returns left Elk Mountain with no merchandise to sell and with no option to finance the purchases of new merchandise.

¶15     Elk Mountain successfully re-applied for the SBA loan after the District Court's summary judgment ruling. The SBA required Elk Mountain to pay a $29,750 origination fee, however, before the SBA would provide financing. This SBA loan allowed Elk

4

Mountain to obtain new merchandise to sell. Elk Mountain estimated that it lost $71,422 in profits after the Fund sent Elk Mountain to collection and before Elk Mountain finally received its SBA loan.

¶16 Elk Mountain also produced evidence at trial that Elk Mountain soon would lose its Arctic Cat dealership due to the Fund's actions. Elk Mountain's reduced sales strained its relationship with Arctic Cat. Arctic Cat informed Elk Mountain in May 2011 that it would terminate their dealership agreement. Arctic Cat instructed Elk Mountain to sell its remaining Arctic Cat inventory by June 11, 2011. Elk Mountain valued this remaining inventory at $94,074. McWilliams testified that he possessed little confidence that he could sell most of this inventory in such a limited time period.

¶17 The District Court awarded damages to Elk Mountain in the amount of $198,749. The damages awarded largely centered on the District Court's implicit conclusion that the Fund's actions had interfered with Elk Mountain's ability to obtain financing. These issues, in turn, hurt Elk Mountain's sales. The court awarded $29,750 for the origination fee required by the SBA, $94,074 for Arctic Cat's unsold inventory, $3,503 for the re-stocking fee that Elk Mountain had incurred when it returned Arctic Cat's merchandise, and $71,422 for lost profits from May 2010 through April 2011—the time period in which Elk Mountain proved unable to secure financing. The District Court declined to award Elk Mountain for ten years of lost profits, however, due to its alleged loss of its Arctic Cat dealership. The District Court determined that Elk Mountain likely would replace Arctic Cat profits by selling greater numbers of used vehicles.

5

¶18 The Fund sought post-trial relief from this judgment. It alleged that the District Court had based its decision on the mistake or misrepresentation that Elk Mountain would lose its Arctic Cat dealership as of June 2011. In fact, Elk Mountain remained an Arctic Cat dealer at the time that the Court issued its judgment in October 2011. The Fund also argued that the judgment should be set aside due to surprise. It contended that Elk Mountain never had alleged or disclosed that it would seek lost sales as part of its damage claim. The Fund became aware of their alleged damages only at trial. The District Court denied the Fund's motion. The Fund appeals and Elk Mountain cross-appeals.

## STANDARD OF REVIEW

¶19 This Court reviews de novo a district court's ruling on summary judgment applying the same criteria as the district court pursuant to M. R. Civ. P. 56. *Smith v. Burlington N. R.R.*, 2008 MT 225, ¶ 10, 344 Mont. 278, 187 P.3d 639. We also review de novo a district court's ruling on a motion for judgment as a matter of law. *Johnson v. Costco Wholesale*, 2007 MT 43, ¶ 18, 336 Mont. 105, 152 P.3d 727.

¶20 We review the factual findings of a district court sitting without a jury to determine whether they are clearly erroneous. *Steiger v. Brown*, 2007 MT 29, ¶ 16, 336 Mont. 29, 152 P.3d 705. A district court's findings are clearly erroneous if not supported by substantial credible evidence, if the district court has misapprehended the effect of the evidence, or if a review of the record leaves this Court with the definite and firm conviction that a mistake has been committed. *Steiger*, ¶ 16. We review the evidence in the light most favorable to the prevailing party when determining whether substantial credible evidence supports the district

court's findings. *Steiger*, ¶ 16. We review for correctness a district court's conclusions of law. *Steiger*, ¶ 16.

## DISCUSSION

¶21 *Did the District Court properly determine that Elk Mountain was entitled to summary judgment on the question of whether the Fund had breached the payment plan agreement?*

¶22 The Fund argues that Elk Mountain—not the Fund—breached the party's repayment agreement. The Fund notes that the agreement required the parties to reach a settlement. The Fund argues that Elk Mountain violated this requirement by refusing to turn over certain financial information. The Fund claims that Elk Mountain's failure to provide this information constituted a material breach. The Fund contends that it reacted appropriately to this breach by referring to collection its claim against Elk Mountain. The Fund points to no language in the contract that obligated Elk Mountain to make a financial disclosure. The Fund instead argues the requirement that Elk Mountain turn over its financial information constituted an incidental obligation to the contractual requirement that the parties reach settlement.

¶23 A contractual provision contains an incidental obligation only when the incidental obligation proves reasonably necessary to a party's performance of an express obligation. Section 28-3-702, MCA. The Fund has failed to allege, let alone demonstrate, the need for Elk Mountain to provide a financial disclosure in order to allow the parties to reach a settlement. The Fund's failure to make this allegation proves fatal to its contention that Elk Mountain possessed an incidental obligation to disclose its financial information to the Fund.

7

¶24 The Fund alternatively argues that it properly exercised its rights under the contract. The Fund contends that the agreement allowed the Fund to send Elk Mountain to collection if Elk Mountain failed to pay by the 15th of any month. The Fund contends that Elk Mountain made four late payments during the period in which the agreement was in place. The Fund contends that these late payments allowed it to send Elk Mountain back to collection.

¶25 The Fund offers no response, though, to the District Court's determination that the Fund had waived its right to terminate the agreement based on late payment. Indeed, the Fund continually accepted these late payments. Violation of the express terms of a contract, including default in payment, vests the non-breaching party with certain rights. *Suburban Homes Co. v. North*, 50 Mont. 108, 117-18, 145 P. 2, 5 (1914). The non-breaching party may waive these vested rights, however, through its actions, or more appropriately, its inaction. *Suburban Homes*, 50 Mont. at 117-18, 145 P. 2 at 5. We previously held that a non-breaching party's acceptance of a payment on a contract after the non-breaching party has declared, or attempted to declare, a default "constitutes a waiver of the default." *Ahrens v. Cottle*, 271 Mont. 339, 343, 896 P.2d 1127, 1129 (1995). This waiver denies to the non-breaching party the right of the non-breaching party under the contract "to sue for acceleration." *Ahrens*, 271 Mont. at 343, 896 P.2d at 1129. *See also Pipe Indus. Ins. Fund Trust of Loc. 41 v. Consol. Pipe Trades Trust*, 233 Mont. 162, 171-73, 760 P.2d 711, 717-18 (1988) (affirming propriety of jury instruction on waiver).

¶26 The Fund took no steps to refer to collection its claim against Elk Mountain after each late payment. The Fund only referred to collection its claim against Elk Mountain more than

8

three months after Elk Mountain had made its last late payment. The Fund's repeated acceptance of late payments, in effect, communicated to Elk Mountain that it would accept these late payments rather than refer to collection its claim against Elk Mountain. The Fund never objected to Elk Mountain's late payments under the payment plan agreement until after Elk Mountain had rejected The Fund's proposal. The Fund accordingly waived its right to terminate the contract based on late payment. *Ahrens*, 271 Mont. at 343, 896 P.2d at 1129-30.

¶27 *Did the District Court properly determine that Elk Mountain could receive consequential damages for the Fund's breach of contract?*

¶28 Section 27-1-311, MCA, provides, in part, that the measure of damages for breach of contract "is the amount which will compensate the party aggrieved for all the detriment which was proximately caused thereby or in the ordinary course of things would be likely to result therefrom." *See also Weyler v. Kaufman*, 196 Mont. 132, 137, 638 P.2d 393, 396 (1981). The District Court found that the facts presented at trial satisfied this requirement.

¶29 The District Court awarded Elk Mountain damages related to Elk Mountain's inability to receive financing and Elk Mountain's increased cost of financing as reflected by the origination fee. Correspondingly, the court awarded Elk Mountain lost profits due to its inability to maintain inventory due to this lack of financing. The Fund argues that no evidence supports the District Court's determination that the Fund's breach caused Elk Mountain damages related to financing. The Fund entirely ignores, however, the testimony of Russ Noonan (Noonan).

9

¶30    Noonan serves as vice president and commercial loan officer for First Community Bank. Noonan has been Elk Mountain's banker since 2005. Noonan testified that the Fund's levies against Elk Mountain's account prevented his bank from providing floor financing to Elk Mountain. Noonan further testified that First Community Bank would have submitted Elk Mountain's SBA loan for approval but for the Fund's actions. The SBA loan stood no chance of approval once the Fund sent Elk Mountain to collection.

¶31    The Fund similarly contends that no evidence supports the District Court's determination that the Fund's breach forced Elk Mountain to return product to Arctic Cat. Elk Mountain offered testimony, however, that established a causal link between the Fund's conduct and Elk Mountain's returning the Arctic Cat merchandise. McWilliams testified that Elk Mountain's lack of funding prevented it from receiving any new products from Arctic Cat. Elk Mountain also provided evidence that the Fund's conduct caused it to lose financing through First Community Bank, the SBA, or any other sources. This testimony provides sufficient proof of causation to support the District Court's determination.

¶32    Finally, the Fund contends that it could not have foreseen that referring to collection its claim against Elk Mountain would cause financing issues for Elk Mountain and the various consequences that would arise from the loss of financing. The Fund should have foreseen that referring to collection a claim against a business could create difficulties in obtaining financing for the business. Likewise, the Fund should have known that a business's inability to receive financing could cause substantial barriers. Beyond the obvious, though, Elk Mountain warned the Fund that retendering the debt would devastate Elk Mountain's business. McWilliams testified that Elk Mountain informed the Fund on

10

multiple occasions that referring to collection its claim against Elk Mountain would cause irreparable harm to Elk Mountain's ability to do business. The Fund offered no evidence to contradict McWilliams's testimony. The District Court accordingly relied upon this credible evidence to award the consequential damages to Elk Mountain.

¶33 *Did the District Court properly deny the Fund's motion for post-trial relief?*

¶34 The Fund contends that the District Court improperly denied the Fund's motion for post-trial relief. The Fund argues two legal rationales supported its motion to set aside the judgment. The Fund first contends that the court should have set aside the judgment due to surprise. M. R. Civ. P. 60(b)(1). The Fund alleges that it had no notice that Elk Mountain intended to advocate for consequential damages. The Fund argues that Elk Mountain failed to plead such damages in its complaint.

¶35 The Fund cites to *CenTech Corp. v. Sprow*, 2006 MT 27, 331 Mont. 98, 128 P.3d 1036, to support its position that a party cannot receive damages that it failed to plead. The Fund failed, however, to preserve this issue for appeal. It offered no objection to Elk Mountain's introduction of evidence in support of its claim for consequential damages. A party who fails to object to an issue at trial waives the right to do so on appeal. *Neal v. Nelson*, 2008 MT 426, ¶ 29, 347 Mont. 431, 198 P.3d 819.

¶36 The Fund also argues that the District Court should have set aside the judgment due to a mistake of fact. M. R. Civ. P. 60(b)(1). Elk Mountain alleged at trial that it soon would lose its Arctic Cat dealership due to its inability to maintain steady inventory because of its struggle to obtain financing. Arctic Cat had instructed Elk Mountain to wind down its Arctic Cat dealership by June 11, 2011—approximately one month after the bench trial. Elk

11

Mountain ultimately did not lose its dealership. The Fund discovered this fact upon realizing that, in October 2011, Elk Mountain continued to advertise itself as an Arctic Cat dealer. Elk Mountain had in fact not lost its dealership. The Fund argues that, in light of Elk Mountain's ability to maintain its Arctic Cat dealership, the District Court should have set aside the judgment.

¶37 A mistake generally means that the mistaken fact existed at the time of trial, and that the parties misapprehended the information before them. *Kruzich v. Old Republic Ins. Co.,* 2008 MT 205, ¶¶ 23-27, 188 P.3d 983, 344 Mont. 126. Mistake does not mean a fact that changes due to future events. *Kruzich*, ¶¶ 23-27. Indeed, parties routinely seek to establish facts that may, or may not, later turn out to be true. Arctic Cat had advised Elk Mountain before the trial to wind down its dealership by June 11, 2011.

¶38 Parties rely on the best available information at the time that they try the case to prove whether an uncertain outcome is more likely than not to be true in the future. Accordingly, a decision to allow a judgment to be overturned simply because facts eventually turn out differently than a jury, or court, determined could cause a never-ending cycle of re-litigated issues. *Cf. Kruzich*, ¶ 20. Elk Mountain's ability to retain its Arctic Cat dealership, therefore, does not constitute a mistake that would warrant a new trial. Moreover, the fact that the court declined to award any sums for Elk Mountain's future lost profits occasioned by the loss of Elk Mountain's Arctic Cat dealership eliminates any need to set aside the judgment.

¶39 *Did the District Court properly calculate damages?*

¶40    The Fund contends that the District Court awarded gross damages rather than net damages. The Fund failed to object to Elk Mountain's exhibits that contained these claims for gross damages rather than net damages. Once again the Fund has failed to preserve properly this issue. *In re Est. of Schueren*, 162 Mont. 417, 427, 512 P.2d 1283, 1288 (1973).

¶41    The Fund also argues that the District Court should have offset any damages that it awarded to Elk Mountain due to Elk Mountain's duty to mitigate damages. *Bronken's Good Time Co. v. J.W. Brown & Assocs.*, 203 Mont. 427, 432, 661 P.2d 861, 864 (1983). The Fund contends that Elk Mountain took no steps to mitigate its damages. In particular, the Fund argues that Elk Mountain could have sold its remaining inventory to other Arctic Cat dealers. The Fund argues that these potential sales to other Arctic Cat dealers would have reduced the amount of unsold inventory that Elk Mountain would have needed to return when it thought that it would lose its Arctic Cat dealership. It argues that the Court should have offset any damages awarded to Elk Mountain by what Elk Mountain could have received by selling this inventory to other Arctic Cat dealers.

¶42    Elk Mountain apparently attempted, to no avail, to sell other dealers this merchandise. McWilliams testified that he had contacted at least three other Arctic Cat dealers about purchasing his inventory. McWilliams testified these other dealers, however, had no interest in Elk Mountain's inventory. This evidence supports the District Court's determination that Elk Mountain had fulfilled its duty to mitigate damages.

¶43    *Cross-appeal: Did the District Court properly deny Elk Mountain's damage claim for ten years of lost profits?*

13

¶44 Elk Mountain alleges that the court failed to award it all the damages that it incurred due to the Fund's breach of the repayment agreement. Elk Mountain claims that the District Court should have awarded future lost profits that stemmed from Elk Mountain's loss of its Arctic Cat dealership. Elk Mountain contends that it would have earned profits of $1.3 million over ten years with its Arctic Cat dealership.

¶45 A court may award future damages, however, only if those future damages are reasonably certain to occur. Section 27-1-203, MCA. The District Court determined that Elk Mountain was not reasonably certain to incur lost profits. The court noted that Elk Mountain likely would make up any lost Arctic Cat sales by selling more used vehicles. The court further determined that Elk Mountain likely would regain its Arctic Cat dealership. The fact that Elk Mountain retained its Arctic Cat dealership indeed reflects the lack of certainty regarding Elk Mountain's claim for future lost profits.

¶46 Elk Mountain also contends that the District Court failed to award various bank fees. Elk Mountain claims that it had to maintain a low bank balance to prevent levies from the Fund. The District Court determined that these bank fees arose from Elk Mountain's account management—rather than from the Fund's breach of the repayment agreement. Substantial credible evidence supports the District Court's factual determination. *Steiger*, ¶ 16.

¶47 Finally, Elk Mountain contends that the District Court failed to award damages related to lost vehicle sales. Elk Mountain argues that the Fund's breach of the repayment agreement hurt its ability to obtain floor financing for used vehicles, such as ATVs. This

lack of floor financing, in turn, hurt Elk Mountain's ability to obtain, and thereby, sell inventory.

¶48    The District Court determined that Elk Mountain had other means to obtain financing for the used vehicles. McWilliams conceded that Elk Mountain could have received financing from various entities who did not offer financing for ATVs, including Arctic Cat snowmobiles. Substantial credible evidence supports the District Court's conclusion that the Fund's breach of the repayment agreement did not cause Elk Mountain to suffer losses related to its future sale of vehicles.

¶49    Affirmed.

/S/ BRIAN MORRIS

We Concur:

/S/ MIKE McGRATH
/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT

15