DA 12-0301

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2013 MT 83

BAXTER HOMEOWNERS ASSOCIATION, INC.,

        Petitioners, Appellees and Cross-Appellants,

    v.

GEOFFREY ANGEL,

        Respondent and Appellant.

| | |
|---|---|
| APPEAL FROM: | District Court of the Eighteenth Judicial District, In and For the County of Gallatin, Cause Nos. DV 11-133B and DV 11-440CX Honorable Mike Salvagni, Presiding Judge |

COUNSEL OF RECORD:

        For Appellant:

            Geoffrey C. Angel, Angel Law Firm; Bozeman, Montana

        For Appellees:

            Brian K. Gallik; Goetz, Gallik & Baldwin, P.C.; Bozeman, Montana

            Arthur V. Wittich, Margot Barg Ogburn; Wittich Law Firm, P.C.; Bozeman, Montana

            Timothy Little, Department of Labor and Industry; Helena, Montana

                       Submitted on Briefs:  February 27, 2013
                                    Decided:  April 2, 2013

Filed:

                                  Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 This matter comes before the Court on cross-appeals of the Eighteenth Judicial District Court's orders reversing the Human Rights Commission's finding of discrimination and award of $6,000 damages to Geoffrey Angel and denying both parties' requests for attorneys' fees. We affirm the District Court's orders. The dispositive issue on appeal is whether Angel possessed proper standing to file a complaint of discrimination on behalf of his unidentified and potential clients. We hold that he did not.

**FACTUAL AND PROCEDURAL BACKGROUND**

¶2 Geoffrey Angel, a Bozeman, Montana, attorney, rented second-floor office space in the Baxter Hotel in downtown Bozeman. The first floor, the mezzanine level, and the second floor of the former hotel are rented for commercial purposes to businesses open to the public. The top four floors house residential condominium units. The building contains a single elevator and a stairway that permit access to all floors. Angel also owned one of the upper-floor residential units and, as such, was a member of the Baxter Homeowners Association (BHA). The BHA's Declarations, as amended in 1997, require that the elevator be locked at all times "in order to secure the safety of the occupants and their possessions."

¶3 In 2007, the BHA board of directors began receiving complaints about the hotel's elevator not being locked as required by the Declarations. In response to the complaints, the board voted in January 2008 to restrict access to the elevator by only permitting unit

owners and their tenants to access the elevator via swipe key cards. Members of the public could access the elevator only when accompanied by someone in possession of a swipe key card. The stairwell remained unlocked during business hours.

¶4 Angel complained to the Baxter's property manager that locking the elevator was inappropriate because it denied persons with disabilities access to his second-floor law office. Angel's complaint was brought to the board's attention and the board directed its attorney to look into whether locking the elevator was discriminatory. Angel filed a complaint with the Montana Human Rights Bureau on March 24, 2008. At its April 2008 meeting, the board discussed options for resolving the elevator dispute and began to explore alternatives. The issue was discussed during each of the board's monthly meetings for the next several months until, in the fall of 2008, the board voted to install a time clock system that would keep the elevator unlocked during business hours and locked at night. The installation was completed in January 2009; since then, the elevator has remained unlocked during normal business hours. Angel moved his law office out of the building in July 2008, relocating to a home he owned in Bozeman where he would not have to pay rent. That home did not have a handicapped-accessible entrance.

¶5 In the meantime, Angel's public accommodations discrimination complaint was investigated by the Montana Human Rights Bureau, which found reasonable cause to proceed with the complaint. BHA filed a motion for summary judgment in the administrative proceedings on the ground that Angel lacked standing to bring the complaint. As summarized by the Hearing Officer, BHA claimed that Angel:

3

cannot show that he is associated with disabled persons, is not an affected person within the meaning of the Montana Human Rights Statute, cannot prove that he has any damages, cannot prove that he moved out of the Baxter Hotel because the elevator was locked and allegedly denying disabled clients access to his office, and cannot seek any affirmative relief because that relief has already been completed.

¶6 The Hearing Officer issued an order on April 6, 2009, denying BHA's motion for summary judgment, but foreclosing Angel's ability to recover damages for lost profits, should he prevail on his claim, because he had failed or refused to identify any client or prospective client who had been denied access to his office because of the locked elevator. The Hearing Officer concluded summarily that because Angel is a licensed attorney who intends to practice discrimination law, "and because he was a tenant at the Baxter Hotel and could engage in discrimination law practice, he can fairly state within the confines of his complaint that he had a specific legal interest to be protected by the Human Rights Act."

¶7 The matter proceeded to a contested case hearing in April 2009, following which the Hearing Officer concluded that Angel had not been discriminated against because installation of the automated time clock was a reasonable accommodation for disabled persons and the delay in implementation of the accommodation was not so long as to constitute a failure to accommodate.

¶8 Angel appealed the Hearing Officer's determination. BHA did not cross-appeal the denial of its motion for summary judgment. The Human Rights Commission rejected the Hearing Officer's proposed decision, concluding that the Hearing Officer applied an incorrect legal standard. The Commission ruled that, once Angel met his burden of

4

showing that he had requested a modification and that the modification was reasonable, BHA had the burden to prove that the requested modification would fundamentally alter the nature of the public accommodation.

¶9 On remand, the Hearing Officer concluded that BHA violated § 49-2-304(1)(a), MCA, when it failed to provide a reasonable alteration to the elevator to permit disabled persons to have unfettered access to the second floor business offices in the Baxter Hotel during business hours, and that such a modification would not have fundamentally altered the nature of the public accommodation that BHA provided. The Hearing Officer further concluded that BHA's discrimination did not cause Angel to vacate his office space and, therefore, he was not entitled to damages for relocating his office. The Hearing Officer did award Angel $6,000 in damages for the assessments he paid as a member of BHA to cover attorneys' fees and expenses in defending Angel's discrimination claim, together with interest in the amount of $815.08. Both Angel and BHA appealed the Hearing Officer's decision to the Commission; BHA did not raise the standing issue argued in its earlier summary judgment motion. In an order dated January 31, 2011, the Commission affirmed the Hearing Officer's decision.

¶10 Both parties petitioned for judicial review. The Department of Labor and Industry reserved its right to intervene if issues pertaining to the Department arose, but did not intervene before the District Court. BHA argued before the District Court that Angel lacked standing to pursue his claim. The District Court held a hearing on both petitions on August 18, 2011. It ruled on both petitions on November 3, 2011, reversing the

5

Hearing Officer's and Commission's finding of discrimination and award of damages to Angel and denying Angel's petition for judicial review and request for attorneys' fees. In a separate order entered April 6, 2012, the court denied BHA's motion for reasonable attorneys' fees on the ground that Angel's complaint of discrimination was not "frivolous, unreasonable, or groundless" and that Angel did not "continue to litigate after it clearly became so." *See McCann v. Trustees, Dodson Sch. Dist.*, 249 Mont. 362, 364, 816 P.2d 435, 437 (1991). Both parties appeal.

## STANDARD OF REVIEW

¶11 On appeal of a district court's ruling on judicial review of a contested case proceeding under the Montana Administrative Procedure Act, we review findings of fact for clear error and conclusions of law for correctness. *Briese v. Mont. Pub. Employees Ret. Bd.*, 2012 MT 192, ¶ 11, 366 Mont. 148, 285 P.3d 550. Issues of justiciability, such as standing, are questions of law, for which our review is de novo. *Reichert v. State*, 2012 MT 111, ¶ 20, 365 Mont. 92, 278 P.3d 455. The District Court's decision to grant or deny an award of attorneys' fees is reviewed for abuse of discretion. *Wohl v. City of Missoula*, 2013 MT 46, ¶ 29, 369 Mont. 46, ___ P.3d ___.

## DISCUSSION

¶12 Angel contends that the District Court erred in reversing the Commission's determination of discrimination and in reversing the award of damages. Angel also claims that he obtained affirmative relief in this action and is the prevailing party entitled to an award of attorneys' fees, even though he represented himself throughout the

6

proceedings. BHA contends that Angel lacks standing to claim discrimination because he was not an aggrieved party under the statute and there was no evidence of discrimination against any individual. In the alternative, BHA argues that the Hearing Officer applied the correct legal standard in the first hearing and the Commission erred by requiring the Human Rights Bureau to apply the "fundamentally alter" test instead of the "reasonable accommodations" test.

¶13 The Department of Labor has filed an Appellee's Brief, arguing that BHA failed to exhaust its administrative remedies on the issue of standing because, though briefing its arguments to the Commission on two separate appearances, it never raised Angel's lack of standing through a cross-appeal or otherwise. The Department additionally argues, along with Angel, that the District Court erred in reversing the Commission's finding of discrimination because it incorrectly interpreted public accommodations analysis by incorporating the "reasonable accommodation" standard unique to the employment discrimination context instead of looking to the "reasonable modification" standard used in public accommodations cases.[1]

¶14 As a preliminary matter, the parties dispute the status of Angel's standing as an "aggrieved party" as defined by § 49-2-101(2), MCA, and we find this issue to be determinative. The question of standing is an exception to the general rule that we will not address issues not properly preserved for appeal. *Armstrong v. State,* 1999 MT 261,

---

[1] To the extent that the Department's arguments are presented for the first time in this appeal, we decline to consider them. *See Gary & Leo's Fresh Foods, Inc. v. State,* 2012 MT 219, ¶ 16, 366 Mont. 313, 286 P.3d 1218.

¶ 4, 296 Mont. 361, 989 P.2d 364. Parties cannot waive objections to standing. *Jones v. Mont. Univ. Sys.*, 2007 MT 82, ¶ 48, 337 Mont. 1, 155 P.3d 1247. "Standing . . . 'is a threshold requirement in every case[,] which we must address and decide *sua sponte* even if it is not raised by a litigant.'" *In re K.H.*, 2012 MT 175, ¶ 23, 366 Mont. 18, 285 P.3d 474 (quoting *Dick Anderson Constr., Inc. v. Monroe Constr. Co., LLC*, 2009 MT 416, ¶ 46, 353 Mont. 534, 221 P.3d 675).

¶15    In relation to the courts, the doctrine of standing evaluates whether a party is entitled to have a court decide the dispute, and is determined as of the time the action is brought. *Heffernan v. Missoula City Council*, 2011 MT 91, ¶ 30, 360 Mont. 207, 255 P.3d 80. One of the recognized prudential limits on standing is that "the plaintiff generally must assert her own legal rights and interests." *Heffernan*, ¶ 32. The Supreme Court has allowed limited exceptions to this rule, recognizing that a litigant may bring an action on behalf of third parties, "provided three important criteria are satisfied":

> The litigant must have suffered an "injury in fact," thus giving him or her a "sufficiently concrete interest" in the outcome of the issue in dispute . . . ; the litigant must have a close relation to the third party . . . ; and there must exist some hindrance to the third party's ability to protect his or her own interests.

*Powers v. Ohio*, 499 U.S. 400, 410-11, 111 S. Ct. 1364, 1370-71 (1991) (citations omitted). The Court declined to invoke this exception in *Kowalski v. Tesmer*, 543 U.S. 125, 125 S. Ct. 564 (2004). Though recognizing that under certain circumstances an attorney-client relationship may be sufficient to confer third-party standing, the Court denied standing to attorneys who lacked a sufficiently "close relationship" with as-yet

8

unknown clients allegedly affected by Michigan's statutory procedure for appointing appellate counsel for indigent defendants who pled guilty. *Kowalski*, 543 U.S. at 130-31, 125 S. Ct. at 568. Even though standing has been conferred "to litigate the rights of third parties when enforcement of the challenged restriction *against the litigant* would result indirectly in the violation of third parties' rights," the litigant still must establish "a close relationship" with the third party, which the Court found could not exist with respect to hypothetical clients. *Kowalski*, 543 U.S. at 131, 125 S. Ct. at 568.

¶16 The question in this case is Angel's standing before the Human Rights Bureau and the Human Rights Commission. We have explained that a litigant's standing before an administrative agency depends on the language of the statute and regulations which confer standing before that agency.[2] *Williamson v. Mont. Pub. Serv. Commn.*, 2012 MT 32, ¶ 30, 364 Mont. 128, 272 P.3d 71. Angel's complaint of discrimination was filed under § 49-2-304, MCA, which makes it an unlawful discriminatory practice for an owner of a public accommodation to deny a physically disabled person any of the accommodation's goods, services, or facilities. The Montana Human Rights Act allows a person claiming to be aggrieved by a discriminatory practice to bring suit under the Act. Section 49-2-501(1), MCA. An "aggrieved party" means someone "who can demonstrate a specific personal and legal interest, as distinguished from a general interest, and who has been or is likely to be specially and injuriously affected" by a

---

[2] We have recognized that the Bureau and the Commission are administrative agencies. *See e.g. CEnTech Corp. v. Sprow*, 2006 MT 27, ¶¶ 12, 20, 331 Mont. 98, 128 P.3d 1036; *Benjamin v. Anderson*, 2005 MT 123, ¶ 30, 327 Mont. 173, 112 P.3d 1039; *see also* §§ 2-15-1706, 49-2-204, 49-2-504(7), 49-2-505, MCA.

9

violation of the Act. Section 49-2-101(2), MCA. Angel argues that the Human Rights Bureau's administrative rules support his right to bring a discrimination complaint because of his association with persons with disabilities. The rules make clear that unlawful discrimination in public accommodations may occur by "denying equal access to the . . . facilities . . . of a public accommodation to a person because of the person's relationship with or association with a member of a protected class." Admin. R. M. 24.9.609(2)(b).

¶17 We conclude that the definition of "aggrieved party" in § 49-2-101(2), MCA— requiring the person to have "a specific personal and legal interest"—places a limitation on administrative standing before the Human Rights Bureau and the Human Rights Commission similar to the prudential limitation on judicial standing in the courts which, as explained above, generally limits the plaintiff to asserting his or her own legal rights and interests. Montana's prohibition against discrimination in public accommodations is substantially similar to that found in Title III of the Americans With Disabilities Act. 42 U.S.C. § 12182(a). Federal law provides a right of action under Title III "to any person who is being subjected to discrimination on the basis of disability in violation of [that statute]." 42 U.S.C. § 12188(a)(1). Title III states that it is discriminatory "to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association." 42 U.S.C. § 12182(b)(1)(E). Under these statutes,

10

"generalized references to association with disabled persons or to advocacy for a group of disabled persons are not sufficient to state a claim for associational discrimination" by which to confer third-party standing. *Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205, 216 (4th Cir. 2002).[3] Since the statute permits a suit under Title III only by a person directly subjected to or targeted by the alleged discrimination, federal courts have denied standing to a litigant that "'is not itself being subjected to . . . discrimination.'" *Equal Rights Ctr. v. Abercrombie & Fitch Co.*, 767 F. Supp. 2d 510, 521 (D. Md. 2010) ("*E.R.C.*") (quoting *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 210 (D. N.J. 2003)). Courts thus have allowed an advocacy organization to bring claims on its own behalf ("organizational standing"), premised on alleged discrimination against disabled individual members of the organization, only where the organization meets the *Kowalski* standards for third-party standing. *E.R.C.*, 767 F. Supp. 2d at 520, 523. An organizational litigant also may have "associational standing" to bring suit as a representative of its members under certain circumstances, one of which is that the organization must "include at least one member with standing to present, in his or her own right, the claim (or the type of claim) pleaded by the association." *United Food & Commer. Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 555, 116 S. Ct. 1529, 1535 (1996); *see also Heffernan*, ¶¶ 42-46 (discussing and applying principles of associational standing); *E.R.C.*, 767 F. Supp. 2d at 524-25 (concluding that The Equal

---

[3] We have found federal precedents persuasive in interpreting the justiciability requirements of our own Constitution. *Heffernan*, ¶ 30 n. 3. We also have relied on federal interpretations in construing Montana's discrimination laws. *BNSF Ry. Co. v. Feit*, 2012 MT 147, ¶ 9, 365 Mont. 359, 281 P.3d 225.

Rights Center, while it lacked organizational standing, had associational standing to litigate the alleged discrimination against its members).

¶18 These authorities are instructive in our construction of the Montana Human Rights Act and related administrative rules. Again, the statute requires "a specific personal and legal interest" in order to confer aggrieved party status. Section 49-2-101(2), MCA. Angel has not alleged a specific *personal* and legal interest. Rather, he asserts the interests of third parties, namely, potential clients who are disabled. The administrative rule Angel cites is not applicable here. That rule would apply only if Angel were the one allegedly subjected to discrimination because of his relationship with disabled clients— which is akin to the concept of "associational discrimination" discussed in the *Freilich* case. Admin. R. M. 24.9.609(2)(b). Nor does Angel have "associational standing" under the principles articulated in the *E.R.C.* case. Angel is not an organization for the purposes of establishing associational standing.

¶19 As noted, there are limited exceptions under which a litigant may bring an action on behalf of third parties. We conclude, however, that Angel has not come close to establishing standing to assert a third party's claim. Like the lawyers in *Kowalski*, he failed to show a "close relationship" with a person who was unlawfully discriminated against by the limited access to the Baxter facilities or that such a third party faced some obstacle to asserting his or her own right. Angel protests that he was right to challenge the locking of the elevator—a challenge sustained by the Human Rights Bureau and upheld by the Commission. Nonetheless, Angel could not demonstrate that he suffered

12

an actual injury during the months in which the elevator was locked or that he possessed third-party standing to assert the rights of a person who did suffer discrimination. We hold that Angel was not an "aggrieved party" within the meaning of § 49-2-101(2), MCA, since he failed to demonstrate "a specific personal and legal interest" and that he "has been or is likely to be specially and injuriously affected" by a violation of the Act.

¶20 Finally, the award of attorneys' fees being discretionary, and upon review of the record, we find no basis to disturb the District Court's decision not to award fees to either party.

¶21 Affirmed.


/S/ BETH BAKER


We concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ BRIAN MORRIS
/S/ JIM RICE

13